## FERNALD *vs.* LINSCOTT & AL.

The purchaser of a right in equity of redemption at a sheriff's sale, may maintain trespass *quare clausum fregit* against the mortgagor in possession, who cuts and takes off the growing grass; the mortgagee never having entered for condition broken.

THIS was an action of trespass *quare clausum fregit* brought *July* 24, 1827, against *William* and *James Linscott*, and others; and was originally entered in a Justice's court, where the defendants pleaded that the *locus in quo* was the soil and freehold of one *James Pugsley;* which was traversed in the court of Common Pleas. At the trial in this court, before *Parris J.* the plaintiff showed a deed of the land from *William* to *James Linscott*, dated *April* 22, 1822; and a mortgage from *James* to *Pugsley;* and proved that he had himself become regularly entitled to the right in equity of redemption,

as the purchaser at a sheriff's sale, held *Aug.* 3, 1826, under an execution against *James.* And it was admitted that an action was still pending in favor of *Pugsley* against *James,* which was brought to recover possession of the mortgaged premises. The plaintiff also proved that he entered and repaired the exterior fences of the farm in the spring after the date of the sheriff's deed to him; and that the defendants, in *July* following, entered into the *locus in quo,* and cut and carried away the grass there growing.

The defendants proved that *James Linscott* had continued to dwell in the mansion house standing on the premises; that he claimed the right to occupy, and take the grass, forbidding the plaintiff when he attempted to cut it; that *Pugsley,* at the mansion house, after condition broken, told him he might cut the grass, requested him to employ a sufficient number of men for that purpose, and said that if it was necessary, he would advance the money to pay them; and that he accordingly engaged the other defendants to assist him in doing the acts complained of. *James* had taken the profits of the land up to that time, without interruption. The plaintiff had exercised no act of ownership, except the repairing of some of the exterior fences; and this was done without the knowledge or consent either of *James* or of *Pugsley.* The latter, being called by the plaintiff, testified that he had never entered for condition broken, nor received any of the produce of the land.

Upon these facts, reported by the Judge, the parties agreed that if the testimony was admissible, and would authorize a jury to find for the defendants, then judgment should be entered for them;—but that if the court should be of a different opinion, then judgment should be entered for the plaintiffs for twenty dollars.

*J. Holmes* and *D. Goodenow,* for the defendants, adverted to the agreement of the parties that the defendants were to have judgment if the facts would justify a jury in finding for them; and they contended that though the testimony of *Pugsley* himself negatived a formal entry for breach of the condition of the deed, yet the jury would have been warranted, from the other evidence, in finding that he was in actual possession of the land, by *James Linscott,* his tenant. The

case then, they contended, even in the aspect most favorable to the plaintiff, stood as an action of trespass brought by the mortgagor against the mortgagee ; which could not for a moment be sustained. On the contrary the mortgagee may treat the mortgagor as a trespasser or a disseisor, even before condition broken ; and his remaining in possession after the mortgage is no disseisin of the mortgagee. *Goodwin v. Richardson*, 11 *Mass.* 469 ; *Newhall v. Wright*, 3 *Mass.* 138 ; *Erskine v. Townsend*, 2 *Mass.* 493 ; *Taylor v. Weld*, 5 *Mass.* 120 ; *Groton v. Boxborough*, 6 *Mass.* 50 ; *Read v. Davis*, 4 *Pick.* 216 ; *Gould v. Newman*, 7 *Mass.* 239 ; *Perkins v. Pitts*, 11 *Mass.* 125 ; *Hicks v. Bingham*, *ib.* 300 ; *Barker v. Parker*, 4 *Pick.* 505.

But here the plaintiff was a mere stranger. His repairing of some of the fences was a clandestine act, which cannot avail him. The statute gives the purchaser of a debtor's equity, no right of entry whatever, but only a mere right to redeem. This the plaintiff had not exercised ; and *James* was still in actual possession under the mortgagee. As purchaser, the plaintiff acquired no title to the possession, till the last remainder of title in the mortgagor was extinct, by the lapse of a year after the sheriff's sale, without redemption of his right in equity, by payment of the amount for which it was sold.

The pendency of *Pugsley's* action does not affect the case, it being brought merely for the purpose of foreclosure.

J. and *E. Shepley*, for the plaintiff, cited *Wellington v. Gale*, 7 *Mass.* 138 ; *Porter v. Millet*, 9 *Mass.* 101 ; *Foster v. Mellen*, 10 *Mass.* 421 ; *Hatch v. Dwight*, 17 *Mass.* 299 ; *Erskine v. Townsend*, 2 *Mass.* 493 ; *Wilder v. Houghton*, 1 *Pick.* 87.

MELLEN C. J. delivered the opinion of the Court.

According to the form of the issue joined by the parties, the question would seem to be whether, at the time of the alleged trespass, the *locus in quo* was the soil and freehold of *Pugsley* ; but from an inspection of the facts detailed in the report, as well as from the information of the Judge who tried the cause, we learn that the principal inquiry and point in dispute at the trial was, whether upon all

the facts in the case, the defence was sustainable, admitting the *locus* to have been, at the time alleged, the soil and freehold of *Pugsley.* We were, at first view of the cause, inclined to the opinion that, as the pleadings stand, we could not decide it on its merits, as they were intended to be decided by the parties; but on further consideration we have altered that opinion. It appears that evidence was offered on both sides, and the conclusion of the report is, " that if the testimony aforesaid was admissible, and would in law authorize a jury to find for the defendants, then judgment is to be entered for them; but if the court should be of a different opinion, then judgment is to be entered for the plaintiff, for $20." Thus it appears that we are to decide the cause upon its merits, without any particular reference to the pleadings. In the first place we do not perceive why the testimony which was introduced was not admissible. On one side, it was the testimony of *Pugsley*; and on the other, the declarations of *Pugsley* in relation to the same subject. The single question then is whether the relation in which the parties stand to each other, is such, that the action is maintainable. The defendants allege that the *locus in quo* was the soil and freehold of *Pugsley*; and to prove that fact they read the deed of *James Linscott,* conveying it to *Pugsley,* in mortgage. The plaintiff is the owner of the equity of redemption, and is now clothed with all the rights which *James Linscott* formerly had as mortgagor. The report states that *Pugsley* never entered for breach of the condition of the mortgage; but that prior to the alleged trespass he had commenced an action, founded on the mortgage, to recover possession of the premises of *James Linscott* the mortgagor, who has always remained in possession; which action was then pending, no judgment having been rendered. The alleged trespass consisted in cutting and carrying away the grass. In the circumstances abovementioned, what were the rights of *Pugsley,* under whom the defendants justify the entry and cutting? While a mortgagor remains in possession he is not liable to account for rents and profits to the mortgagee. 2 *Atk.* 107. 3 *Atk.* 244. In *Hatch v. Dwight,* 17 *Mass.* 289, the court say, " although a mortgagee may enter at any time, yet until he enters, the land must be considered as belonging to the mortga-

gor." So in the case of *Houghton v. Wilder*, 1 *Pick.* 87, the Chief Justice in delivering the opinion of the court says, "The mortgagee may enter and dispossess him (the mortgagor) but until this is done, he has the same rights that he would have, if he had never mortgaged, except that he cannot lawfully *do* any thing to impair the estate or the security of the mortgagee." The case also decides the principle that until entry, the mortgagor is not accountable for rents and profits ; for he is not a trespasser in taking them, nor is there any express or implied promise to account for them. But we have decided in the case of *Stowell v. Pike & al.* 2 *Greenl.* 387, that before entry, the mortgagee may maintain an action of trespass against the mortgagor, for cutting down and carrying away the timber growing on the mortgaged premises ; as it may be destructive of the mortgagee's security. Now in the case before us, as *Pugsley* never had entered and taken possession of the land, he had no right to the profits, nor could he take them himself or authorise any other person so to do. They belonged to the plaintiff. The case of *Blaney v. Bearce*, 2 *Greenl.* 132, differs from this. There the decision was wholly on the question of title to the *locus in quo*, which was expressly in issue by the pleadings. That was an action of trespass *quare clausum* by the mortgagor against the assignee of the mortgagee ; and as it did not appear that the defendant did any thing more than barely enter on the land, doing no damage to the mortgagor, or taking the profits of the land, the court would not sustain the action. On the facts presented in this cause, we are satisfied that, for the reasons above assigned, the action is maintainable. According to the agreement of the parties there must be　　　　　*Judgment for $20 damages and costs.*